UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER SANDERS,

                Plaintiff,

v.

                                           Case No. 3:19-cv-430-J-34JBT

BRIAN STARLING, et al.,

                Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Christopher Sanders, an inmate of the Florida penal system, initiated this action on April 16, 2019, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1). In the Complaint,[1] Sanders asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Brian Starling; (2) Sean Fogarty; (3) Lieutenant Woods; (4) Nurse C. Fox; (5) Nurse Carrie Reed; (6) Bryan Allen; (7) Kelly Brown; (8) Warden Barry Reddish; (9) Nurse Mae Harrold; (10) Major M. Honour; (11) Mitchell Mason; (12) Assistant Warden Lane; (13) A. Powell; (14) John Doe 2, a sergeant at Florida State Prison (FSP); (15) Nurse Sharron Marshall; (16) Lisa Tyre; (17) Tammy A. Gibson; (18) Inspector General Jeffery Beasley; and (19) Sergeant Jonathan Aikin. Sanders alleges that Defendants mistreated him from January 2017 through August 2017, at FSP. As relief, he requests compensatory and punitive damages. Additionally, he asks that the

_____

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Court direct the Florida Department of Corrections (FDOC) to terminate Defendants' employment, and order the State of Florida to revoke the licenses of the "Medical Defendants." Complaint at 9.

This matter is before the Court on Defendants Honour and Reddish's Motion to Dismiss (Motion; Doc. 24) and Defendant Harrold's Motion to Dismiss (Harrold Motion; Doc. 27). The Court advised Sanders that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 6). Sanders filed responses in opposition to the Motions. See Response to Defendants' Reddish and Honour's Motion to Dismiss (Response; Doc. 51); Response to Defendant Harrold's Motion to Dismiss (Response II; Doc. 72). Thus, Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[2]

Sanders asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendant Starling orchestrated the January 28, 2017 use of excessive force against Sanders (count one), see Complaint at 7; slammed Sanders' arm in the cell door, causing permanent shoulder damage (count two), see id.; and

_____

[2] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions to dismiss filed by Defendants Honour, Reddish, and Harrold, the Court's recitation of the facts will focus on Sanders' allegations as to them.

allowed several officers to beat Sanders (count three), see id. at 10. He also states that Starling, Woods, Fox, and Allen violated his First and Eighth Amendment rights when they retaliated against him for witnessing and reporting the beating of Dyshonty Gordon, FDOC #166312 (count five), and placed Sanders in a cold cell with a broken window and no clothes or bedding (count four), see id. at 10. Next, Sanders asserts that Starling, Woods, Brown, and Powell violated his Fourth Amendment right when they unlawfully searched and seized his property (count six). See id. Additionally, he maintains that Defendants violated his First Amendment right when Woods, Fox, Allen, Brown, Mason, Powell, Aikin, and Fogarty, on Starling's behalf, retaliated against him (count eight), see id., and Tyre and Gibson disposed of Sanders' grievances to cover-up the use of excessive force and denial of medical treatment (count nineteen), see id. at 12.

According to Sanders, Defendants violated his Eighth Amendment right over the course of several months in 2017 when: Starling, Woods, Fox, Allen, Morris, Marshall, Brown, Mason, Powell, Aikin, Fogarty, Reed, and Harrold conspired to inflict physical and emotional harm on Sanders (count seven), see id. at 10; Starling, Woods, Fox, Allen, Fogarty, and Powell unlawfully sprayed him with chemical agents (count nine), see id. at 10-11; Starling, Fogarty, Aikin, and Mason intentionally caused Sanders to suffer with permanent disfigurement, thus violating Florida Statutes section 784.045(7) (count ten), see id. at 11; Marshall, Harrold, Fox, Morris, and Reed failed to follow FDOC procedures and refused to place Sanders on self-harm observation status (SHOS) (counts eleven and thirteen), see id.; Marshall, Fox, and Morris watched Sanders harm himself and failed to remove him from his cell for medical treatment (count twelve), see id.; Marshall and

Harrold jammed a lavage tube down Sanders' throat until he spat blood (count fourteen), see id.; Marshall, Harrold, Fox, Morris, and Reed refused to file an incident report to alert the administration about the abuse (count fifteen), and failed to document and treat Sanders' injuries (counts sixteen and seventeen), see id. at 12; Starling, Harrold, Marshall, Fogarty, Allen, Reed, Brown, Aikin, Mason, Morris, Woods, Tyre, Gibson, and Powell falsified documents to cover-up the abuse (count eighteen), see id.; Reddish, Lane, Honour, and Beasley refused to protect Sanders from Starling, Fox, Woods, Allen, Mason, Harrold, Marshall, Aikin, Fogarty, and Brown's use of excessive force (count twenty), see id. at 12-13; Aikin, Brown, Harrold, Marshall, Fogarty, Powell, and Mason used excessive force (punching, eye poking, choking, beating, and jamming a tube down his throat) against him (count twenty-one), see id. at 13; Aikin, Fogarty, and Mason used excessive force (beating him until his eye busted open) against him (count twenty-two), see id.; and Beasley refused to direct that an investigator interview Sanders about the alleged abuse (count twenty-three), see id.

As to the underlying facts, Sanders asserts that he saw a cell extraction team use excessive force against inmate Dyshonty Gordon on January 27, 2017, and reported the abuse in front of the handheld camera. See id. at 7. According to Sanders, officers placed him on property restriction on January 28th for misuse of state property, which he denied, see id. at 8, sprayed him with chemical agents, see id. at 14, and assaulted him, see id. at 14-15. He also states that the cell extraction team beat him in the medical clinic. See id. at 15. Sanders maintains that he was not placed on SHOS, but instead assigned to a C-wing cell with a broken window where he suffered for three days in freezing

4

temperatures with no bedding and only boxer shorts. See id. at 15-16. He asserts that he declared a medical emergency on January 29th, and was informed that his shoulder was "out of place." Id. at 16. He asserts that he submitted several emergency grievances about the staff abuse on February 1st, but the Inspector, Warden, and/or Assistant Warden never interviewed him. See id. According to Sanders, he submitted a barrage of grievances about the abuse, some of which were forwarded to the Inspector General. See id. at 17-18.

Next, Sanders alleges that officers, on Starling's behalf, set him up for abuse on April 23, 2017. See id. at 18. He states that officers assaulted him and sprayed him with chemical agents. See id. He asserts that Defendant Harrold refused to have him placed on SHOS when she knew that he had swallowed pills. See id. According to Sanders, when officers placed him in a restraint chair, he "kicked" one of them "in an attempt to defend" himself as they "clamped the shackles down" on his ankles. Id. at 19. He states that officers assaulted him and escorted him to B-wing, where they left him in a SHOS cell for three days with injuries to his ankles, head and wrist. See id.

Sanders also describes staff mistreatment in early May 2017, culminating into him swallowing pills and the officers' use of chemical agents on May 8, 2017. See id. at 19-20. He maintains that Harrold and another nurse "performed a lavage" on him and jammed the tube down his throat until he spat blood. Id. at 21. According to Sanders, Harrold refused to have Sanders placed on SHOS even when he told her that he was suicidal. See id. Sanders states that, instead of filing an incident report and placing him on SHOS, Harrold told the officers to provide Sanders with a shower and cell escort. See

id. He states that he tried to hang himself in the shower. See id. He avers that he was placed in a SHOS cell, and then returned to B wing. See id. According to Sanders, he submitted three grievances on June 14, 2017, relating to staff abuse. See id.

Sanders maintains that he "declared a mental health emergency and swallowed a bunch of pills in front of the camera and nurse" on August 3, 2017, due to the ongoing staff abuse. Id. at 22. He asserts that Harrold unnecessarily performed a lavage when he "was not refusing to drink the charcoal." Id. He states that Harrold and another nurse jammed the tube down his throat until he spat blood. See id. According to Sanders, Fogarty squeezed his head and poked his eyes during the lavage, and accused Sanders of kicking Sergeant Scott. See id. He avers that Harrold refused to place him on SHOS. See id. He maintains that officers escorted him to a shower where they sprayed him (presumably with chemical agents) and he tried to hang himself. See id. at 23. He asserts that, after an Emergency Treatment Order (ETO) shot, officers tripped and "jumped" him, which busted his mouth, lips, and eye. Id. He states that he "kicked out trying to get away and hit [a nurse] in the leg. Id. He avers that Harrold "put two butterfly stitches on [his] eye" and cream on his eyelid. Id. According to Sanders, Harrold told him he "deserved everything [he] got" because he had kicked a nurse. Id. He states that he filed several grievances about the incident, but no one responded. See id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's

World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV. Summary of the Arguments

Defendants Reddish and Honour request dismissal of Sanders' Eighth Amendment claims against them. See Motion at 7-8. In his Response, Sanders maintains that he filed grievances between February 1, 2017, and August 28, 2017, informing Reddish and Honour about Defendants Starling, Fox, Allen, Brown, Aikin, Powell, Fogarty, Marshall, Mason, Woods, Harrold, and Reed's abuse towards him, and "[a]t no time was [he] given protection from the abusers by Defendants Reddish and Honour." Response at 1. Defendant Harrold maintains that Sanders fails to state plausible Eighth Amendment claims against her, and that she is entitled to qualified immunity. See Harrold Motion at 6-18. In response, Sanders asserts that he states plausible Eighth Amendment

---

[3]   "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

claims against Harrold, and that she is not entitled to qualified immunity. <u>See</u> Response II at 1-5.

## V. Discussion

### A. Eighth Amendment Claims Against Defendants Warden Reddish and Major Honour

Sanders maintains that Defendants Reddish and Honour refused to protect him from Starling, Fox, Woods, Allen, Mason, Harrold, Marshall, Aikin, Fogarty, and Brown's use of excessive force. <u>See</u> Complaint at 12-13. In the Complaint, Sanders asserts that he submitted emergency grievances about the January 28, 2017 incident, but was never interviewed by the Inspector, the Warden and/or the Assistant Warden. <u>Id.</u> at 16, ¶ 36; 20, ¶ 78 (stating he wrote the Warden). He also alleges that he submitted a grievance (relating to Reddish and Honour not protecting him) on June 14, 2017, but it was "never processed." <u>Id.</u> at 21. Defendants maintain that Sanders fails to state plausible Eighth Amendment claims against Reddish and Honour. <u>See</u> Motion at 7-8. In his Response, Sanders states that he filed several grievances between February 1, 2017, and August 28, 2017, alerting Reddish and Honour about the ongoing staff abuse. <u>See</u> Response at 1-3.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. <u>Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "requires proof of an

9

affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" in § 1983 cases. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556 57 (11th Cir. 1984). As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

As to supervisory liability, the United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[4] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).
>
> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged

---

[4] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

> deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[ 5 ] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (rejecting the application of a heightened pleading standard for § 1983 cases involving qualified immunity)); see also Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights,[6] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[ 7 ] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[8] or (4) a history of widespread

---

5 Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

6 See Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

7 See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

8 See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing

> abuse that put the supervisor on notice of an alleged
> deprivation that he then failed to correct. See id. at 1328-29
> (listing factors in context of summary judgment).[9] A
> supervisor cannot be held liable under § 1983 for mere
> negligence in the training or supervision of his employees.
> Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam). Here, Sanders has

alleged sufficient facts suggesting that Warden Reddish was personally involved in, or

otherwise causally connected to, the alleged violations of his federal statutory or

constitutional rights. As to Defendant Honour, Sanders has failed to allege any facts

suggesting that Honour was personally involved in, or otherwise causally connected to,

any alleged violations of his federal statutory or constitutional rights. Therefore, the Court

will dismiss Sanders' Eighth Amendment claim against Defendant Honour. As such,

Defendants Reddish and Honour's Motion is due to be granted in part and denied in part.

## B. Eighth Amendment Claims Against Nurse Harrold

Next, Sanders asserts that Defendant Harrold violated his Eighth Amendment right

when she: conspired with other prison staff members to harm Sanders (count seven), see

Complaint at 10; refused to follow FDOC procedures and to place Sanders on SHOS

(counts eleven and thirteen), see id. at 11; jammed a lavage tube down Sanders' throat

until he spat blood (counts fourteen and twenty-one), see id. at 11, 13; refused to file an

incident report about the abuse (count fifteen), see id. at 12, failed to document and treat

---

misconduct by Yates's subordinates and Yates failed to stop the misconduct. These
allegations allow a reasonable inference that Yates knew that the subordinates would
continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[9] See West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

his injuries (counts sixteen and seventeen), see id.; and falsified documents to cover-up the abuse (count eighteen), see id. Defendant Harrold maintains that Sanders fails to state plausible Eighth Amendment claims against her. See Harrold Motion at 6-16. In response, Sanders asserts that he states plausible Eighth Amendment deliberate indifference claims against her. See Response II at 1-4.

Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.[10] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state

---

[10] Chandler, 379 F.3d at 1289.

13

> of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Oliver, 739 F. App'x at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has instructed:

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."[11] Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation omitted).

---

[11] See Patel v. Lanier Cty. Ga., No. 19-11253, 2020 WL 4591270, *9 n.10 (11th Cir. Aug. 11, 2020) (recognizing "a tension" within Eleventh Circuit precedent relating to the "more than mere negligence" and "more than gross negligence" phrases and stating that "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard").

14

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating "[g]rossly incompetent or inadequate care can constitute deliberate indifference …, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well-settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic

techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

In the Complaint, Sanders asserts that Harrold mistreated him on April 23, 2017, May 8, 2017, and August 3, 2017, after his suicide attempts. <u>See</u> Complaint at 18-23. According to Sanders, officers escorted him on April 23, 2017, to the infirmary to have his stomach pumped because he had swallowed pills. <u>See</u> <u>id.</u> at 18. He complains that Harrold was verbally abusive, and said she would not place him on SHOS. <u>See</u> <u>id.</u> Nevertheless, he states that officers placed him in a SHOS cell for three days. <u>See</u> <u>id.</u> at 19. According to Sanders, he again swallowed pills on May 8th, and Harrold performed a lavage by jamming the tube down his throat until he spat blood. <u>See</u> <u>id.</u> at 21. He complains that Harrold was unsympathetic when he told her he was suicidal, and that she initially intended to return him to his cell instead of SHOS. <u>See</u> <u>id.</u> He avers that he was placed in a SHOS cell that same day. <u>See</u> <u>id.</u> Sanders states that he declared a mental health emergency on August 3rd, and swallowed pills in front of the camera and a nurse. <u>See</u> <u>id.</u> at 22. He avers that Harrold did not need to perform a lavage because he was willing to drink the charcoal, but she followed the officers' directive to perform a lavage and "make it hurt." <u>Id.</u> He asserts that Officer Fogarty squeezed his head and poked him in the eyes as Harrold performed the lavage. <u>See</u> <u>id.</u> According to Sanders, Harrold initially refused his request for SHOS, but he was placed on SHOS that same day after he tried to hang himself in the shower. <u>See</u> <u>id.</u> at 23.

As to any alleged verbal abuse or insulting gestures on the part of Defendant Harrold, such allegations do not state a claim of federal constitutional dimension. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam). Nor can Sanders' assessment of Harrold's "bedside manner" support "an inference of deliberate indifference." Bismark, 213 F. App'x at 897 ("While [plaintiff] objects to [defendant]'s apparently brusque mannerisms, it is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required.") (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)) (footnote omitted).

Sanders' assertions relating to Harrold's provision of medical care and failure to place him on SHOS on April 23rd, May 8th, and August 3rd fail to state plausible Eighth Amendment deliberate indifference claims against Harrold. The Complaint reflects that Harrold provided Sanders with immediate medical treatment when he swallowed pills on April 23, May 8th, and August 3rd, and that Sanders was ultimately placed on SHOS as a result of his suicidal tendencies. To the extent Sanders is complaining about Harrold's lavage procedure and course of treatment, such a complaint would be at most a claim of negligence or a disagreement with Harrold's medical treatment choice, neither of which is sufficient to state a claim of deliberate indifference to a serious medical need. Thus, taking Sanders' allegations as true, as this Court must do, he fails to state plausible Eighth Amendment deliberate indifference claims against Defendant Harrold. As such,

Defendant Harrold's Motion is due to be granted as to Sanders' deliberate indifference claims (counts 11, 13, 14, 17, 21) against Defendant Harrold.[12]

Additionally, Sanders maintains that Harrold violated his Eighth Amendment right when she conspired with twelve prison staff members to harm him. See Complaint at 10, ¶ 7. "[T]he linchpin for conspiracy is agreement, which presupposes communication." Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). Sanders need not "produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)) (internal citation omitted). In the Complaint, Sanders provides no facts suggesting that Harrold reached an understanding or agreement with the other staff members to use excessive force against Sanders. As such, Harrold's Motion is due to granted as to Sanders' conspiracy claim against her in count 7.

Next, Sanders complains that Defendant Harrold failed to file an incident report to alert the prison administration about the abuse Sanders had encountered. See Complaint at 12, 21. He also asserts that Harrold refused to document his injuries and falsified documents to cover-up the abuse. See id. at 12. Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution or federal law, not for violations of prison regulations. 42 U.S.C. § 1983. Notably, a violation

---

[12] For this same reason, Defendant Harrold's assertion of her right to qualified immunity would provide an alternative basis for dismissal.

of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (recognizing that "prison regulations [are] primarily designed to guide correctional officers in the administration of a prison" and "such regulations [are] not designed to confer rights on inmates"); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (emphasizing that a § 1983 plaintiff must prove the defendant deprived him of a right secured by the Constitution or laws of the United States). As a health care professional, Harrold is responsible for providing medical care to inmates, such as Sanders, which she did. Taking Sanders' allegations as true, Harrold focused her efforts on the emergency at hand, which was treatment of Sanders' self-inflicted injury on the three occasions Sanders describes. Sanders provides no facts suggesting that Harrold witnessed abusive events that warranted the filing of an incident report. Nor did Sanders provide any facts relating to his claims that Harrold falsified medical records and failed to document his injuries to cover-up ongoing staff abuse. As such, Harrold's Motion is due to be granted as to Sanders' Eighth Amendment claims against her in counts 15, 16, 18.

In consideration of the foregoing, it is now

**ORDERED**:

1.  Defendants Honour and Reddish's Motion to Dismiss (Doc. 24) is **PARTIALLY GRANTED** as to Sanders' Eighth Amendment claim against Defendant Honour. Otherwise, the Motion is **DENIED**.

2.     Defendant Harrold's Motion to Dismiss (Doc. 27) is **GRANTED**, and Sanders' Eighth Amendment claims against her in counts 7, 11, 13, 14, 15, 16, 17, 18, and 21 are **DISMISSED**.

3.     The Clerk shall terminate Nurse Mae Harrold and Major M. Honour as Defendants in the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of August, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 8/20
c:
Christopher Sanders, FDOC #R24565
Counsel of Record