UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER SANDERS,

                    Plaintiff,

v.
                                                    Case No. 3:19-cv-430-MMH-JBT

BRIAN STARLING, et al.,

                    Defendants.

_____

## ORDER

### I. Status

Plaintiff Christopher Sanders, an inmate of the Florida penal system,

initiated this action on April 16, 2019, by filing a pro se Civil Rights Complaint

(Complaint; Doc. 1).[1]  In the Complaint, Sanders asserts claims pursuant to 42

U.S.C. § 1983 against the following Defendants: (1) Brian Starling; (2) Sean

Fogarty; (3) Lieutenant Woods; (4) Crystal Waite;[2] (5) Carrie Reed; (6) Bryan

Allen; (7) Kelly Brown; (8) Warden Barry Reddish; (9) Mae Harrold; (10) Major

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite
the document page numbers assigned by the Court's electronic docketing
system.

[2] The Court directed the Clerk to correct the name of Defendant C. Fox
to Crystal Waite. See Order (Doc. 107).

M. Honour; (11) Mitchell Mason; (12) Assistant Warden Lane; (13) A. Powell; (14) John Doe 2; (15) Sharron Braziel-Marshall; (16) Lisa Tyre; (17) Tammy A. Gibson; (18) Jeffery Beasley; and (19) Jonathan Aikin.[3] Sanders alleges that Defendants mistreated him from January 2017 through August 2017, at Florida State Prison (FSP). As relief, he requests compensatory and punitive damages. Additionally, he asks that the Court direct the Florida Department of Corrections (FDOC) to terminate Defendants' employment, and order the State of Florida to revoke Defendants' medical licenses. See Complaint at 9.

This matter is before the Court on Defendants Crystal Waite and Sharron Braziel-Marshall's Motion to Dismiss Plaintiff's Complaint (Motion; Doc. 112). The Court advised Sanders that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 6). Sanders filed a response in opposition to the Motion. See Response to Defendants Marshall and Waites' Motion to Dismiss (Response; Doc. 116). Thus, Defendants' Motion is ripe for review.

---

[3] The Court dismissed Sanders' claims against Defendants John Doe 2, Reed, Lane, Beasley, Aikin, Powell, Harrold, and Honour. See Orders (Docs. 111, 98, 83).

## II. Plaintiff's Allegations[4]

Sanders asserts that Defendant Waite violated his Eighth Amendment right when she, among others, placed Sanders in a cold cell with a broken window and no clothes or bedding. See Complaint at 10 (count 4). He also states that Waite violated Sanders' First Amendment right when she retaliated against Sanders for witnessing and reporting the beating of inmate Dyshonty Gordon, FDOC #166312. See id. (counts 5, 8). According to Sanders, Defendants Waite and Braziel-Marshall violated his Eighth Amendment right when they conspired with others to inflict physical and emotional harm on Sanders, see id. (count 7); they failed to follow FDOC procedures and refused to place Sanders on self-harm observation status (SHOS), see id. at 11 (counts 11, 13); they watched Sanders harm himself and failed to remove him from his cell for medical treatment, see id. (count 12); they refused to file an incident report to alert the administration about the abuse, and failed to document and

---

[4] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion to dismiss filed by Defendants Waite and Braziel-Marshall, the Court's recitation of the facts will focus on Sanders' allegations as to them.

3

treat Sanders' injuries, see id. at 12 (counts 15, 16, 17); Waite, among others, unlawfully sprayed Sanders with chemical agents, see id. at 10-11 (count 9); and Braziel-Marshall jammed a lavage tube down Sanders' throat until he spat blood, see id. at 11, 13 (counts 14, 21), and also falsified documents to cover up the abuse, see id. at 12 (count 18).

As to the underlying facts, Sanders asserts that he saw a cell extraction team use excessive force against inmate Dyshonty Gordon on January 27, 2017, and reported the abuse in front of the handheld camera. See id. at 7. He states that Defendant Waite moved away from "ear shot of the camera" and told Sanders that "they had something" for him since he wanted to be a witness. Id. at 7-8. He avers that officers placed him on property restriction on January 28th for misuse of state property, which he denied. See id. at 8. Sanders states that when Waite came to his cell with Captain Starling "to act like they were doing Crisis Intervention Counseling," Waite instead asked Sanders if he would exit the cell. Id. at 8. According to Sanders, he showed Waite a handful of pills (Tegretol 200mg), declared a mental health emergency, and swallowed the pills in front of Waite and Starling. See id. at 14. He asserts that Waite stated, "those are just Ibuprofen" and walked away rather than asking that the officers remove Sanders from the cell. Id. Sanders avers that officers sprayed him with chemical agents and assaulted him. See id. at 14-15.

4

According to Sanders, Waite performed a lavage in the medical clinic. See id. at 15. He also states that Starling and Waite "had the cell extraction team" beat Sanders in the medical clinic. See id. He maintains that Waite refused to put him in a SHOS cell, and instead Waite, among others, assigned him to a C-wing cell with a broken window where he suffered for three days in freezing temperatures with no bedding and only boxer shorts. See id. at 15-16. According to Sanders, he complained about staff abuse "throughout the incident," however, Waite refused to file an incident report. Id. at 16. According to Sanders, a nurse treated Sanders' "out of place" shoulder and head injuries on January 29th, and put Sanders' name on "the emergency list" to see a doctor. Id. He asserts that he saw a doctor about his shoulder injury on February 1, 2017. See id. at 17.

Next, Sanders alleges that officers, on Starling's behalf, set him up for abuse on April 23, 2017. See id. at 18. He states that officers assaulted him and sprayed him with chemical agents. See id. He asserts that a nurse refused to place him in a SHOS cell when she knew he had swallowed pills. See id. According to Sanders, when officers placed him in a restraint chair, he "kicked" one of them "in an attempt to defend" himself as they "clamped the shackles down" on his ankles. Id. at 18-19. He states that officers assaulted him and

escorted him to B-wing, where they left him in a SHOS cell for three days with injuries to his head, ankles, and wrist. See id.

Sanders also describes staff mistreatment in early May 2017, culminating in him swallowing pills and the officers' use of chemical agents on May 8, 2017. See id. at 19-20. He maintains that two nurses performed a lavage on him and jammed the tube down his throat until he spat blood. See id. at 21. According to Sanders, instead of filing an incident report and placing him on SHOS, one of the nurses told the officers to provide Sanders with a shower and cell escort. See id. He states that he tried to hang himself in the shower. See id. He avers that he was placed in a SHOS cell, and then returned to B wing. See id.

Additionally, Sanders maintains that he declared a mental health emergency and swallowed "a bunch of pills" on August 3, 2017, due to the ongoing staff abuse. Id. at 22. He asserts that, in the medical clinic, Defendant Braziel-Marshall "yanked" his nose back and "jammed" ammonia up his nose, causing a nosebleed. Id. He also states that Braziel-Marshall unnecessarily performed a lavage when he "was not refusing to drink the charcoal." Id. He states that Braziel-Marshall and another nurse jammed the tube down his throat until he spat blood. See id. According to Sanders, an officer squeezed his head and poked his eyes during the lavage, and accused Sanders of kicking a

6

sergeant. See id. He avers that Braziel-Marshall refused to place him on SHOS. See id. He maintains that officers escorted him to a shower where they sprayed him (presumably with chemical agents) and he tried to hang himself. See id. at 23. He asserts that officers returned him to the emergency room where Braziel-Marshall gave him an Emergency Treatment Order (ETO) shot. See id. According to Sanders, officers "jumped" him as he left the emergency room, and Braziel-Marshall "again jammed an ammonia" into his nose. See id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further,

7

the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th

8

Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[5] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

## IV. Summary of the Arguments

Defendants Waite and Braziel-Marshall request dismissal of Sanders' First and Eighth Amendment claims against them. See Motion at 6-23. They assert that (1) Sanders fails to state plausible claims against them; (2) Defendants are entitled to qualified immunity; (3) Sanders' claims for injunctive relief are moot because the FDOC transferred him from FSP to the Reception and Medical Center; (4) the Court lacks the authority to direct the FDOC to terminate Defendants' employment or to order the State of Florida to revoke Defendants' medical licenses; and (5) Sanders' compensatory and punitive damages claims are barred by 42 U.S.C. § 1997e(e). In his Response,

---

[5] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Sanders maintains that he states plausible claims against Defendants Waite and Braziel-Marshall, see Response at 2-8, and that Defendants are not entitled to qualified immunity, see id. at 8-9. He also argues that he is entitled to compensatory and punitive damages as well as injunctive relief. See id. at 9-10.

## V. Law

### A. Eighth Amendment

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" in § 1983 cases. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556 57 (11th Cir. 1984). As

such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" <u>Rehberger v. Henry Cnty., Ga.</u>, 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." <u>Oliver v. Fuhrman</u>, 739 F. App'x 968, 969 (11th Cir. 2018) (citing <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate

11

> the Eighth Amendment. Id.[6] The challenged
> condition must be extreme and must pose an
> unreasonable risk of serious damage to the prisoner's
> future health or safety. Id. The Eighth Amendment
> guarantees that prisoners are provided with a
> minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner
> must allege that the prison official, at a minimum,
> acted with a state of mind that constituted deliberate
> indifference. Id. This means the prisoner must show
> that the prison officials: (1) had subjective knowledge
> of a risk of serious harm; (2) disregarded that risk; and
> (3) displayed conduct that is more than mere
> negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th
> Cir. 2003).

Oliver, 739 F. App'x at 969-70. "To be cruel and unusual punishment, conduct

that does not purport to be punishment at all must involve more than ordinary

lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475

U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the

Eighth Amendment to prohibit 'deliberate indifference to serious medical

needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016)

(quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has

instructed:

> To prevail on a deliberate indifference claim, [a
> plaintiff] must show: "(1) a serious medical need; (2)

---

6 Chandler, 379 F.3d at 1289.

the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."[7] <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation omitted).

<u>Easley v. Dep't of Corr.</u>, 590 F. App'x 860, 868 (11th Cir. 2014). For medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir.1991)); <u>see also</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating "[g]rossly incompetent or inadequate care can constitute deliberate indifference …, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

---

[7] <u>See</u> <u>Patel v. Lanier Cnty. Ga.</u>, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020) (recognizing "a tension" within Eleventh Circuit precedent relating to the "more than mere negligence" and "more than gross negligence" phrases and stating that "no matter how serious the negligence, conduct that can't fairly be characterized as <u>reckless</u> won't meet the Supreme Court's standard").

13

Notably, the law is well-settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

14

## B. Qualified Immunity

With respect to qualified immunity, the Eleventh Circuit has instructed:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of

15

his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017); see King v. Pridmore, 961 F.3d 1135, 1142 (11th Cir. 2020). The Court notes that where the alleged conditions are particularly egregious, a general constitutional law already identified in decisional law may be applicable such that a reasonable officer would know that the egregious conditions violate the Constitution. Taylor v. Riojas, 141 S. Ct. 52 (2020). In an action with multiple named defendants, each

16

defendant is entitled to an independent qualified immunity analysis as it relates to his actions. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

## VI. Discussion

### A. Eighth Amendment Cell Conditions – Count 4

Sanders asserts that Defendant Waite violated Sanders' Eighth Amendment right when she, among others, placed Sanders in a cold cell with a broken window and no clothes or bedding on January 28, 2017. See Complaint at 10, 15-16. He describes the circumstances (including swallowing pills and a visit to the medical clinic for a lavage) that led to the cell assignment. See id. at 14-16. According to Sanders, officers took Sanders to the C-wing cell because Waite refused to put him in a SHOS cell. See id. at 15-16. Defendant Waite maintains that Sanders fails to state a plausible Eighth Amendment claim against her. See Motion at 6-7. She asserts that Sanders "presents no factual support" for his assertion that she knew the cell had subpar conditions. Id. at 6. Additionally, Waite argues that Sanders fails to show a causal connection between her conduct and an Eighth Amendment violation because she "has no control over cell assignments." Id. at 7. In his Response, Sanders states that Waite "allowed other defendants" to place him in a "non-certified" freezing cell with no clothes or bedding. Response at 3-4.

17

According to Sanders, Waite had "the power to choose" the type of cell that best suited Sanders' needs. Id. at 4.

Even if Sanders satisfied the objective prong of a conditions-of-confinement claim with respect to the alleged three-day exposure to subpar conditions, he has not provided facts sufficient to satisfy the subjective prong. Sanders provides no facts supporting an inference that Defendant Waite knew of, yet disregarded, "a substantial risk of harm" to Sanders. Saunders v. Sheriff of Brevard Cnty., 735 F. App'x 559, 564 (11th Cir. 2018) (per curiam) (citation omitted). Taking Sanders' allegations as true, as the Court must, he provides a detailed chronology of what transpired before officers escorted him to the C-wing cell. Given those circumstances as described by Sanders, Waite was faced with Sanders' urgent medical needs when officers escorted him to the medical clinic. As a medical professional, Waite was responsible for addressing Sanders' medical needs in the infirmary that day, which she did. See Complaint at 15. Sanders fails to allege any facts suggesting that Waite had a duty to escort Sanders to his C-wing cell and monitor the conditions of the cell that he temporarily occupied.

To the extent Sanders is complaining about Waite's SHOS decision and the course of treatment chosen, such a complaint would be at most a claim of negligence or a disagreement with Waite's medical treatment choice, neither

18

of which is sufficient to state a claim of deliberate indifference to a serious medical need. See Brown v. McClure, 849 F. App'x 837, 841-42 (11th Cir. 2021) (per curiam) ("As we have said, where a 'prisoner has received some medical attention and the dispute is over the adequacy of the treatment,' we are 'generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (citing Hoffer, 973 F.3d at 1272). Notably, the next day (January 29th), Sanders saw another nurse who attended to his medical needs related to a shoulder injury, not ailments related to the cell conditions. See id. at 16. As such, Defendants' Motion as to Sanders' Eighth Amendment claim in count 4 against Defendant Waite is due to granted.

## B. First Amendment Retaliation – Counts 5 and 8

Sanders asserts that Defendant Waite retaliated against him for reporting the alleged beating of another inmate. See Complaint at 10. According to Sanders, the retaliatory measures included physical and emotional harm and medical mistreatment. See id. Defendant Waite maintains that Sanders fails to state a plausible First Amendment retaliation claim against her. See Motion at 7-12. In his Response, Sanders asserts that he states a plausible claim against her. See Response at 4-5.

19

As to a First Amendment retaliation claim, the Eleventh Circuit has instructed:

> [T]he First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam). To prevail on a retaliation claim, [the plaintiff] must establish that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action ... and the protected speech." Id. (second alteration in original). Once the plaintiff establishes that protected conduct was a motivating factor for the alleged harm, the burden shifts to the defendant to show it would have taken the same action without the protected activity. Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013).

Mpaka v. Jackson Memorial Hospital, 827 F. App'x 1007, 1010 (11th Cir. 2020). Here, even if Sanders' speech was constitutionally protected and Waite's alleged retaliatory conduct likely would have deterred a person of ordinary firmness from engaging in such speech, Sanders' assertions fail to establish the required causal connection between the retaliatory action and the protected speech. Sanders' retaliation claim against Defendant Waite largely hinges on the actions of others, such as corrections officials who allegedly used excessive force against Sanders when he refused to exit his cell on January 28, 2017.

20

According to Sanders, Captain Starling placed Sanders on property restriction and directed that other officers spray Sanders with chemical agents because he had refused a strip search. See Complaint at 8, 14. Waite's involvement was limited to her role as a medical professional. According to Sanders, Waite conducted crisis intervention counseling at Sanders' cell front, asked Sanders if he would exit the cell on his own, and performed a lavage to save his life when officers brought him to the medical clinic. See id. at 14-15. These allegations fail to support a plausible claim for retaliation against Waite. As such, Defendants' Motion as to Sanders' First Amendment retaliation claims in counts 5 and 8 against Waite is due to granted.

### C. Conspiracy – Count 7

Sanders asserts that Defendants Waite and Braziel-Marshall violated his Eighth Amendment right when they conspired with other prison staff members to harm him. See Complaint at 10. Defendants maintain that Sanders fails to state a plausible conspiracy claim against them. See Motion at 11-12. In his Response, Sanders generally asserts that Defendants worked with others to inflict emotional and physical harm upon him. See Response.

"[T]he linchpin for conspiracy is agreement, which presupposes communication." Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). Sanders need not "produce a 'smoking gun'

21

to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)) (internal citation omitted). In the Complaint, Sanders provides no facts suggesting that Waite and Braziel-Marshall reached an understanding or agreement with other prison staff members to use excessive force against Sanders and inflict emotional harm. As such, Defendants' Motion as to Sanders' conspiracy claim in count 7 against them is due to be granted.

### D. Chemical Spraying – Count 9

Next, Sanders asserts that Defendant Waite, among others, unlawfully sprayed Sanders with chemical agents. See Complaint at 10-11. Defendant Waite maintains that Sanders fails to state a plausible Eighth Amendment claim against her because he provides no facts that Waite sprayed him with chemical agents or directed someone else to do it. See Motion at 12. Additionally, Waite states that Sanders does not allege that Waite was present when prison security staff sprayed him with chemical agents. See id. In his Response, Sanders asserts that Waite encouraged the cell extraction team to beat him and failed to intervene when corrections officers abused him in the medical clinic. See Response at 6.

22

Notably, Sanders provides no facts suggesting that Defendant Waite sprayed Sanders with chemical agents or had the authority to direct the extraction team to physically abuse Sanders. Sanders acknowledges that, after trying to counsel Sanders, Waite returned to the medical clinic where she attended to Sanders' medical needs. As such, Defendants' Motion as to Sanders' Eighth Amendment claim in count 9 against Defendant Waite is due to be granted.

### E. Eighth Amendment Medical (and Related) Claims

Sanders also asserts that Defendants Waite and Braziel-Marshall violated his Eighth Amendment right when they failed to follow FDOC procedures and refused to place Sanders in a SHOS cell, see Complaint at 11 (counts 11, 13); they watched Sanders harm himself and failed to remove him from his cell for medical treatment, see id. (count 12); they refused to file an incident report to alert the administration about staff abuse, and failed to document and treat Sanders' injuries, see id. at 12 (counts 15, 16, 17). Additionally, he states that Waite performed a lavage on January 28, 2017, and Braziel-Marshall used ammonia and conducted a lavage on August 3, 2017, see id. at 11, 13 (counts 14, 21). And, Sanders states that Braziel-Marshall falsified documents to cover up staff abuse, see id. at 12 (count 18).

23

Sanders maintains that Waite and Braziel-Marshall mistreated him on January 28th and August 3rd, respectively, after Sanders' suicide attempts. See id. at 15-16, 22-23. According to Sanders, on both occasions, officers escorted him to the infirmary to have his stomach pumped because he had swallowed pills. See id. at 14-15, 22. He complains that Waite was verbally abusive, and said she would not place him on SHOS. See id. at 15. He states that he again swallowed pills on April 23rd and May 8th, and blames other nurses for similar conduct.[8] He avers that, after he ingested pills on August 3rd, Braziel-Marshall placed ammonia up his nose, performed a lavage on him by jamming the tube down his throat until he spat blood, and gave him an ETO shot. See id. at 21-23. According to Sanders, Braziel-Marshall initially refused his request for SHOS, but he was placed on SHOS that same day after he tried to hang himself in the shower. See id. at 23. Defendants maintain that Sanders fails to state plausible Eighth Amendment claims against them. See Motion at 13-21. In his Response, Sanders asserts that he states plausible Eighth Amendment claims against them. See Response at 2-8.

---

[8] Sanders makes similar assertions about other nurses who allegedly mistreated him on April 23, 2017, and May 8, 2017, after his suicide attempts. See Complaint at 18-21.

24

Sanders' assertions relating to Waite and Braziel-Marshall's provision of medical care fail to state plausible Eighth Amendment deliberate indifference claims against them. Accepting Sanders' allegations in the Complaint, Waite and Braziel-Marshall provided Sanders with immediate medical treatment when he swallowed pills on January 28th and August 3rd, and Sanders was ultimately placed on SHOS as a result of his suicidal tendencies. To the extent Sanders is complaining about the lavage procedures and course of treatment chosen as a result of his self-harm, such a complaint would be at most a claim of negligence or a disagreement with Waite and Braziel-Marshall's medical treatment choice, neither of which is sufficient to state a claim of deliberate indifference to a serious medical need. See Brown, 849 F. App'x at 841-42. The medical attention Sanders received from Defendants Waite and Braziel-Marshall is not "so reckless or conscience-shocking as to constitute deliberate indifference." Hoffer, 973 F.3d at 1278. Thus, taking Sanders' allegations as true, as this Court must, he fails to state plausible Eighth Amendment deliberate indifference claims against Defendants Waite and Braziel-Marshall. Thus, Defendants' Motion is due to be granted as to Sanders' Eighth Amendment deliberate indifference claims in counts 11-14, 17, and 21 against Defendants Waite and Braziel-Marshall.

25

As to any alleged verbal abuse or insulting gestures on the part of Defendant Waite, such allegations do not state a claim of federal constitutional dimension. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam). Nor can Sanders' assessment of Waite's "bedside manner" support "an inference of deliberate indifference." Bismark, 213 F. App'x at 897 ("While [plaintiff] objects to [defendant]'s apparently brusque mannerisms, it is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required.") (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)) (footnote omitted).

Next, Sanders complains that Defendants Waite and Braziel-Marshall failed to file an incident report to alert the prison administration about the abuse Sanders had encountered, and they refused to document his injuries. See Complaint at 12, 16. He also asserts that Braziel-Marshall falsified documents to cover up the abuse. See id. at 12. Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution or federal law, not for violations of prison regulations. 42 U.S.C. § 1983. Notably, a violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (recognizing that "prison regulations [are]

26

primarily designed to guide correctional officers in the administration of a prison" and "such regulations [are] not designed to confer rights on inmates"); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (emphasizing that a § 1983 plaintiff must prove the defendant deprived him of a right secured by the Constitution or laws of the United States).

As health care professionals, Waite and Braziel-Marshall are responsible for providing medical care to inmates, such as Sanders, which they did. Taking Sanders' allegations as true, Waite and Braziel-Marshall, among other medical personnel, focused their efforts on the emergencies at hand, which was treatment of Sanders' self-inflicted injuries on the four occasions Sanders describes in the Complaint. Sanders provides no facts suggesting that Waite and Braziel-Marshall witnessed abusive events that warranted the filing of incident reports. Nor did Sanders provide any facts relating to his claims that they failed to document his injuries to cover up ongoing staff abuse or that Braziel-Marshall falsified documents. As such, Defendants' Motion is due to be granted as to Sanders' Eighth Amendment claims in counts 15, 16, and 18 against Defendants Waite and Braziel-Marshall.

### F. Qualified Immunity

Defendants Waite and Braziel-Marshall assert that they are entitled to qualified immunity from liability under 42 U.S.C. § 1983. See Motion at 19-21.

In his Response, Sanders maintains that they are not entitled to qualified immunity. See Response at 8-9. Under the doctrine of qualified immunity, Defendants Waite and Braziel-Marshall may claim they are entitled to qualified immunity from monetary damages in their individual capacities. As to the underlying facts against each Defendant, Sanders asserts that Defendants Waite and Braziel-Marshall mistreated him on January 28, 2017, and August 3, 2017, respectively, when they attended to Sanders' medical needs after his suicidal gestures and failed to take measures to correct the injustices that Sanders experienced when he repeatedly tried to harm himself. Defendants were engaged in discretionary functions during the events at issue. Thus, to defeat qualified immunity with respect to these Defendants, Sanders must show both that Defendants committed a constitutional violation, and that the constitutional right violated was clearly established. As the Eleventh Circuit has instructed, the Court must "parse" the actions each Defendant undertook, and "address the evidence as it pertains solely to him." Alcocer, 906 F.3d at 952.

For the reasons set forth above, the Court has found that Sanders has failed to state plausible Eighth Amendment claims against either Defendant Waite or Defendant Braziel-Marshall or a plausible First Amendment claim against Defendant Waite. Thus, Defendants Waite and Braziel-Marshall are

28

entitled to qualified immunity from monetary damages in their individual capacities as to Sanders' Eighth Amendment claims against them. Additionally, Defendant Waite is entitled to qualified immunity from monetary damages in her individual capacity as to Sanders' First Amendment claim against her. As such, Defendants' Motion as to their assertion of qualified immunity with respect to Sanders' First and Eighth Amendment claims is due to be granted.[9]

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendants Waite and Braziel-Marshall's Motion to Dismiss (Doc. 112) is **GRANTED**, and Sanders' First and Eighth Amendment claims in counts 4-5, 7-9, 11-18, and 21 against them are **DISMISSED**.

2.     The Clerk shall terminate Crystal Waite and Sharron Braziel-Marshall as Defendants in the case.

---

[9] The Court need not address Defendants' assertions as to Sanders' requests for injunctive and monetary relief. See Motion at 21-23. Nevertheless, the Court notes that the FDOC transferred Sanders back to FSP. See FDOC Corrections Offender Network, www.dc.state.fl.us/offenderSearch (last visited July 7, 2021). Additionally, the Court neither has the authority to direct the FDOC to terminate Defendants' employment nor to order the State of Florida to revoke Defendants' medical licenses.

3.     Defendants Brian Starling, Sean Fogarty, Lieutenant Woods, Bryan Allen, Kelley Brown, Warden Reddish, Mitchell Mason, Lisa Tyre, and Tammy Gibson filed Answers. <u>See</u> Docs. 60, 74, 81, 88. The Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of July, 2021.


**MARCIA MORALES HOWARD**
United States District Judge


Jax-1 7/19
c:
Christopher Sanders, FDOC #R24565
Counsel of Record